UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **REBECCA SHERER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.:  6:21-CV-00663-RDP |
| } | |
| **KILOLO KIJAKAZI, Acting** } | |
| **Commissioner Social Security** } | |
| **Administration,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Rebecca Sherer brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

Plaintiff filed her application for disability and DIB on January 12, 2017, alleging disability beginning April 16, 2016.[1] (Tr. 117, 216, 304-05). Her application was initially denied on June 20, 2017. (Tr. 117). Plaintiff then requested and received a hearing before Administrative Law Judge Jerome Munford ("ALJ"). (Tr. 166, 179-80). Following this hearing, the ALJ issued an unfavorable decision on April 29, 2019. (Tr. 119). The Appeals Council granted Plaintiff's request

---

[1] Plaintiff amended her alleged onset date from May 16, 2015 to April 16, 2016. (Tr. 216).

for review and remanded the case to the ALJ to (1) clarify "the finding of limitation related to the B criteria of concentrating, persisting, or maintaining pace" and (2) further evaluate the treating source opinions of Dr. James and Dr. Boshell. (Tr. 148-51, 288-90). After a second administrative hearing was held on September 14, 2020, the ALJ again issued an unfavorable decision. (Tr. 10). Plaintiff filed another request for review of the ALJ's decision, which the Appeals Council denied. (Tr. 1). After the Appeals' Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.

Plaintiff was 47 years old at the time of the second administrative hearing. (Tr. 37, 351). She has a college education and last worked in February 2016 as a teacher. (Tr. 342). Plaintiff alleges disability due to a tear in her right hip, bulging discs in her neck and back, right leg pain, migraines, and chronic pain. (Tr. 341).

During the September 14, 2020 hearing, Plaintiff testified that the tear in her right hip "is the worst part of [her] condition" and makes her unable to sit for more than thirty minutes. (Tr. 83-84). Plaintiff further testified that her hip pain radiates into her right leg and limits her ability to stand and walk for longer than ten to fifteen minutes. (Tr. 84-85). She stated that although she takes medication to manage her pain, the medication makes her dizzy and sleepy. (Tr. 86). In addition, Plaintiff testified that she suffers from neuralgia and migraines. (Tr. 87). Plaintiff stated, however, that while her Botox injections "help tremendously" with reducing her migraines, she still experiences daily headaches. (Tr. 87). Plaintiff testified that she cooks dinner, drives her son to school, and folds laundry, but that her pain limits her ability to vacuum or mop. (Tr. 88-89). She also indicated difficulty sleeping due to her hip pain. (Tr. 90).

In February 2015, Plaintiff visited neurologist Dr. O'Neal and reported pain in her head and neck. (Tr. 1064). She began taking Floricet and Neurontin and noted that she was also experiencing hip pain radiating down her right leg. (Tr. 1060). In May 2015, Dr. O'Neal referred Plaintiff to Andrews Sports Medicine and Orthopaedic Center for an evaluation of her right hip. (Tr. 551). Plaintiff continued to receive regular evaluations at Andrews through 2020. (Tr. 581-616, 1770-1804). Though Plaintiff reported increased tenderness over time, her evaluations also showed a normal range of motion, normal stability, normal sensation in her legs, and a normal gait. (Tr. 1011, 1017, 1773, 1783).

From 2015 to 2020, Plaintiff also regularly visited her chiropractor Dr. Boshell, reporting neck and back pain as well as worsening pain in her right hip. (Tr. 571-80, 716-72, 1203-25, 1453-1643). During this time, Plaintiff reported hip pain after such activities as cleaning her home, carrying a backpack while walking on a mission trip, and decorating a tree on a stepladder. (Tr. 1224, 1568, 1614). In her February and May 2017 medical source statements, Dr. Boshell opined that Plaintiff was unable to work and could not sit, stand, or walk for more than 30 minutes. (Tr. 571, 631). However, Dr. Boshell also completed an insurance form for Plaintiff in November 2018 in which she noted Plaintiff as having a "Class 3" impairment and being capable of "light work activity." (Tr. 1228). In December 2018, Plaintiff's primary care provider, Dr. James, completed a disability form in which he opined that Plaintiff could not sit for more than twenty minutes or stand for more than ten minutes. (Tr. 1199-1200).

In January 2016, Dr. O'Neal referred Plaintiff for Botox injections to reduce her continued migraines. (Tr. 1050, 1444). Following her first injections, Plaintiff reported that her headaches were "very infrequent," and in October 2016, Dr. O'Neal indicated that Plaintiff was doing "extremely well" on Botox. (Tr. 1044, 1046). Plaintiff reported experiencing "virtually no

headaches" in November 2018 due to her Botox and Neurontin treatments, and she continued receiving periodic Botox injections through 2020. (Tr. 1033, 1660, 1808-19).

In April 2018, Plaintiff reported to Dr. O'Neal that the Flexeril she took for her neck pain made her drowsy and also that she was experiencing memory problems. (Tr. 1036). Dr. O'Neal then referred Plaintiff to Dr. Meneese, who conducted a neuropsychological evaluation in June 2018. (Tr. 1091). While Dr. Meneese diagnosed Plaintiff with anxiety, depression, and PTSD, he also noted that Plaintiff's ability to sustain her attention and to communicate fell within the average range "in terms of task efficiency and within the high average range in terms of task accuracy in comparison to age and education-matched peers." (Tr. 1093). He further concluded that Plaintiff had only a "mild impairment" in her verbal memory functioning. (Tr. 1095). Plaintiff sought no further treatment for any mental disorders.

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." 20 C.F.R. § 404.1572. "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii).  Absent such an impairment, the claimant may not claim disability. *Id.*  Third, the ALJ must determine whether the claimant's

4

impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity following her alleged onset date of disability. (Tr. 16). The ALJ then found that Plaintiff had the following severe impairments: osteoarthritis, occipital neuralgia, lumbar radiculopathy, lumbar spondylosis, myofascial pain, tendinitis, trochanteric bursitis, piriformis syndrome, S1 joint dysfunction, right leg sciatica, and cervicalgia. (Tr. 16). The ALJ also classified Plaintiff's headaches and mental impairments as non-severe impairments. (Tr. 17, 20). However, the ALJ found that Plaintiff lacked an impairment or combination of impairments that met or medically

equaled the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 20). The ALJ then concluded that Plaintiff's RFC rendered her capable of performing a range of sedentary work with certain limitations. (Tr. 21). In reaching this conclusion, the ALJ noted that Plaintiff's "statements about the intensity, persistence, and limiting effects of her conditions are not entirely consistent with the objective medical evidence." (Tr. 22). Finally, the ALJ determined that although Plaintiff could not perform past relevant work, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 35-36).

## III.  Plaintiff's Argument for Reversal

Plaintiff presents the following arguments supporting reversal of the ALJ's decision. First, Plaintiff argues that the ALJ failed to fully develop the record because he did not elicit testimony or make any findings regarding the effect of Plaintiff's medications on her ability to work. (Pl.'s Mem. 5). Second, Plaintiff contends that substantial evidence does not support the ALJ's determination that her mental health symptoms and headaches were non-severe impairments. (Pl.'s Mem. 5-11). Finally, Plaintiff asserts that the ALJ improperly weighed the opinion evidence of her treating physicians. (Pl.'s Mem. 11-17).

## IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the

Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.    Discussion

After careful review, the court concludes that the ALJ did not err in his findings or conclusions.

### A.    The ALJ Properly Considered the Alleged Side Effects of Plaintiff's Medications

Plaintiff asserts that the ALJ failed to fully develop the record by not properly considering the drowsiness she experienced as an alleged side effect of her medications. (Pl.'s Mem. 5). To support this claim, Plaintiff references *Cowart v. Schweiker*, 662 F.2d 731 (11th Cir. 1981), in which an ALJ was found to have failed to fully develop the record because he elicited no testimony and made no findings regarding the effects of the claimant's medications upon her ability to work. (Pl.'s Mem. 5). However, *Cowart* is distinguishable from this case.

In *Cowart*, the ALJ had a "special duty" to thoroughly develop the record because the claimant was not represented by counsel. *Cowart*, 662 F.2d at 735. Here, in contrast, Plaintiff was

represented at her hearing, and her counsel had the opportunity to elicit additional testimony regarding the side effects of her medications. *See also Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985) (distinguishing *Cowart* based on claimant's representation); *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010) (same). Furthermore, unlike in *Cowart*, the ALJ here adequately considered Plaintiff's daytime drowsiness in reaching his decision. In his discussion of Plaintiff's neuropsychological evaluation from June 14, 2018, the ALJ acknowledged that Dr. Meneese noted Plaintiff's "mild intensity daytime drowsiness." (Tr. 18). The ALJ also discussed Plaintiff's statement to Dr. O'Neal that taking Flexeril "makes her sleepy the next day" when determining Plaintiff's RFC. (Tr. 30).

Although an ALJ has a duty to fully and fairly develop the record, this obligation does not relieve a claimant of the burden of proving her disability. *See Walker*, 404 F. App'x at 366. To satisfy this burden, a claimant must provide evidence "that her symptoms (including any medication side effects) make her unable to work." *Id.* Here, Plaintiff cites her own testimony and subjective statements made to healthcare providers to support her claim that her daytime drowsiness made her unable to work. (Pl.'s Mem. at 5-6).

When an ALJ finds that a claimant's subjective descriptions of the intensity, persistence, and limiting effects of her symptoms are unsupported, that finding may also "encompass[] her testimony about her side effects." *Walker*, 404 F. App'x at 367. Because the ALJ in this case generally found that Plaintiff's subjective descriptions of her symptoms were "not entirely consistent with the objective medical evidence," the ALJ's finding dealt with Plaintiff's descriptions of her side effects as well. (Tr. 22). As a result, the ALJ properly addressed the side effects of Plaintiff's medications in his decision, finding that Plaintiff's statements regarding her side effects were "not entirely consistent" with the record.

8

**B.     The ALJ's Finding that Plaintiff's Mental Impairments and Headaches Were Not Severe Impairments Was Supported by Substantial Evidence**

Plaintiff alleges that the ALJ erred in finding her headaches and mental impairments were non-severe. (Pl.'s Mem. 9-10). The court first notes that even if the ALJ failed to identify all of Plaintiff's severe impairments, this error would be harmless. At step two of the disability evaluation test, the ALJ must determine if the claimant has any severe impairment. The ALJ is not required, however, to identify all of the claimant's severe impairments. Rather, the ALJ's "finding of any severe impairment, whether or not it results from a single severe impairment or a combination of impairments that qualifies as 'severe' is enough to satisfy step two." *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Thus, where an ALJ determines that a claimant suffers from a severe impairment or combination of impairments that satisfies step two, the ALJ's failure to identify an additional severe impairment does not affect the ALJ's analysis under the subsequent steps of the test. *See Jamison*, 814 F.2d at 588; *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951-52.

Here, at step two, the ALJ found that Plaintiff had multiple severe impairments. (Tr. 16). The ALJ then considered Plaintiff's severe and non-severe impairments, including her drowsiness, mental impairments, and headaches, in combination when determining Plaintiff's RFC. (Tr. 21-35). Because the ALJ found severe impairments and considered non-severe impairments in evaluating Plaintiff's RFC, any failure to identify additional severe impairments at step two would constitute only harmless error.

In addition, the ALJ's determination that Plaintiff's headaches and mental health symptoms were non-severe was supported by substantial evidence. The claimant bears the burden of proving

9

disability, including whether an impairment is severe. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

### 1. Substantial Evidence Supports that Plaintiff's Headaches Were Non-Severe

Plaintiff claims that the ALJ incorrectly found that her headaches were non-severe, citing multiple instances in the record in which providers noted Plaintiff's migraines and asserting that Plaintiff's "documented and continued struggle with headaches" warranted finding a severe impairment. (Pl.'s Mem. 11). Plaintiff further argues that the ALJ's analysis of her headaches too heavily "revolved around her Botox treatments." (Pl.'s Mem. 10). This court, however, may not reweigh the evidence that was before the ALJ. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence."). So long as substantial evidence supports the ALJ's finding that Plaintiff's headaches were non-severe, then this court must affirm.

Here, the record provides substantial evidence supporting the ALJ's finding. In 2016, Plaintiff's neurologist, Dr. O'Neal, began treating her headaches with Botox and Neurontin (Tr. 708). From 2016 to 2018, Dr. O'Neal indicated a sharp decline in the number of headaches Plaintiff experienced after her treatment began. (Tr. 699, 703, 1033, 1038, 1044). In 2018, Dr. O'Neal noted that Plaintiff's Botox injections had reduced her headaches from thirty per month to two per month, while Plaintiff indicated having only three to four headaches per month in 2019. (Tr. 692, 1667, 1670, 1672). In Plaintiff's 2020 progress notes, Dr. O'Neal repeatedly indicated that Plaintiff was doing "very well" on Botox. (Tr. 1812, 1826, 1832). This evidence indicates that Plaintiff's headaches were well controlled by her Botox and Neurontin treatment. Because the record offers "such relevant evidence as a reasonable person would accept as adequate to support a conclusion"

that Plaintiff's headaches were a non-severe impairment, substantial evidence supports the ALJ's finding. *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).

## 2. The ALJ Properly Evaluated Plaintiff's Mental Impairments

Plaintiff also asserts that the ALJ improperly found that her mental impairments, including anxiety, depression, drowsiness, and memory loss, were non-severe. (Pl.'s Mem. 5-10). When evaluating the severity of a claimant's mental condition, the ALJ must assess the degree of the claimant's limitation in the four functional areas of the "paragraph B" criteria under the Listings of Impairments. *See* 20 C.F.R. § 404.1520a(b)(2), (c)(3), (e)(4); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E. The four functional areas refer to the claimant's ability to (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E. When the ALJ finds that the claimant has a degree of limitation of "none" or "mild" in these functional areas, the claimant's mental impairment is generally non-severe. *See* 20 C.F.R. § 404.1520a(d)(1). Here, the ALJ determined that Plaintiff had no more than a "mild" limitation in each functional area and accordingly found that her mental impairments were non-severe. (Tr. 20).

Substantial evidence supports the ALJ's finding of a non-severe impairment. In reaching his decision, the ALJ cited Plaintiff's medical history extensively, including Plaintiff's 2018 neuropsychological evaluation, in which Plaintiff scored within the average range on tests of visual memory, communication, reading comprehension, and problem-solving skills. (Tr. 19, 1093-94). The ALJ further considered Plaintiff's visits with various providers, who described her as "alert and oriented" and having an "appropriate mood and affect." (Tr. 19, 582, 662, 1033, 1166, 1811). Additionally, the ALJ referenced Plaintiff's Adult Function Reports, in which she reported the

11

ability to perform various activities like driving, cooking, reading, and managing her self-care, among others. (Tr. 20, 365-72, 437-45).

Plaintiff further argues that the opinions of Dr. Meneese, whom the ALJ afforded good weight, support finding a severe impairment and cites his diagnosis of Plaintiff with anxiety, depression, PTSD, and other psychological disorders as proof that her mental impairments were severe. (Pl.'s Mem. 9). However, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Though Dr. Meneese diagnosed Plaintiff with certain mental disorders, his report provides substantial evidence that these conditions only mildly impaired her ability to work. Dr. Meneese noted that although Plaintiff reported daytime drowsiness, her performance during the examination "was not adversely affected by drowsiness." (Tr. 1093). According to Dr. Meneese, Plaintiff was also able to sustain attention at a level "commensurate with or slightly better than most peers," and she was able to follow complex commands and communicate complex ideas. (*Id.*). Dr. Meneese also concluded that Plaintiff suffered only "mild impairment in verbal memory functioning." (Tr. 1095). Thus, Dr. Meneese's neuropsychological evaluation provides further evidence that supports a determination that Plaintiff's mental impairments only mildly affected her ability to work and were non-severe.

Beyond Dr. Meneese's report, Plaintiff relies largely on her own subjective statements made to providers to assert that her mental impairments were severe. (Pl.'s Mem. 5-7). However, subjective complaints made by a claimant are not, by themselves, enough to establish a severe impairment. *See* 20 C.F.R. § 404.1521 ("A physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of

symptoms . . . to establish the existence of an impairment."). As a result, the ALJ did not err in weighing the objective medical evidence and finding Plaintiff's mental impairments non-severe.

### C. The ALJ Properly Evaluated the Opinion Evidence of Plaintiff's Treating Physicians

Finally, Plaintiff contends that the ALJ erred by assigning "little weight" and "partial weight" to Dr. Boshell's and Dr. James's opinions, respectively. (Pl.'s Mem. 11). When determining the weight afforded to a medical opinion, an ALJ must consider the following factors: the examining and treatment relationship between the physician and claimant; the length of treatment and frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the evidence; the physician's specialization; and other factors tending to support or contradict the medical opinion. *See* 20 C.F.R. § 404.1527(c).[2]

Absent "good cause," an ALJ generally must give a treating physician's opinion "substantial or considerable weight." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause exists when (1) the treating physician's opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the opinion is conclusory or inconsistent with the physician's own medical records. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). So long as the ALJ provides a "specific justification" for disregarding an opinion, the court will not second-guess the ALJ's decision to afford an opinion lower weight. *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

---

[2] Because Plaintiff filed her claim before March 27, 2017, the rules in § 404.1527 regarding the evaluation of opinion evidence are applicable in this case. *See* 20 C.F.R. § 1520c.

### 1. Dr. James

In December 2018, Dr. James opined that Plaintiff "could not stand for longer than 10 minutes" or "sit for longer than 10 to 20 minutes" and stated that these limitations rendered her unable to perform her duties as a teacher. (Tr. 1199). The ALJ assigned Dr. James's opinion lower weight and provided a specific justification for discounting it: "[Dr. James's] opined restrictions are not consistent with the other, objective, clinical evidence[.]" (Tr. 35).

Substantial evidence supports a finding that Dr. James's opinion is inconsistent with the medical evidence in the record. Plaintiff's treatment records from Andrews Sports Medicine and Orthopaedic Center contain evidence that is inconsistent with Dr. James's opinion. In October 2016, Plaintiff was noted to be "able to do almost all activities with minimal pain" and exhibited a normal gait with no tenderness in her right hip. (Tr. 539). Though Plaintiff displayed greater tenderness in her right hip in April 2017, she reported "about 75% improvement" from her cortisone injections in January 2018. (Tr. 582, 1017). From 2018 to 2019, Plaintiff continued to have a normal range of motion, normal stability, normal sensation in her legs, and a normal gait. (Tr. 1011, 1017, 1783). While in March 2020 Plaintiff showed increased tenderness in her right hip, she also exhibited normal external rotation, stability, and strength. (Tr. 1773).

Plaintiff's treatment records from her neurologist, Dr. O'Neal, further support that Dr. James's opinion was inconsistent with the medical evidence. Examinations from 2016 to 2020 show that Plaintiff had 5/5 strength in her right hip as well as a normal gait, normal sensation, and normal muscle tone. (Tr. 1034, 1038, 1044, 1812, 1818). Though Dr. O'Neal noted greater tenderness in Plaintiff's neck in later visits, Plaintiff still had a full range of motion. (Tr. 1036, 1816). These treatment records provide substantial evidence supporting the ALJ's decision to discount Dr. James's opinion.

### 2. Dr. Boshell

In her February and May 2017 medical source statements, Dr. Boshell stated that Plaintiff was unable to work and could not sit, stand, or walk for longer than 30 minutes. (Tr. 571, 631). In a November 2018 insurance form, Dr. Boshell recorded Plaintiff as having a "Class 3" impairment, which corresponds to only a slight limitation and the ability to perform light work activity (Tr. 1228). The ALJ afforded each of Dr. Boshell's medical source statements little weight and explained that they "are not persuasive or consistent with the cumulative evidence of record." (Tr. 34). Additionally, regarding the November 2018 insurance form, the ALJ explained that Dr. Boshell's opinion that Plaintiff was unable to work was inconsistent with her determination that Plaintiff had only a "Class 3" impairment. (Tr. 34, 1228).

The court first notes that Dr. Boshell is a chiropractor and is thus not an "acceptable medical source"; rather, he qualifies as an "other" source whose opinions are not entitled to special consideration. *See* 20 C.F.R. §§ 404.1502(a), 404.1527(a); SSR 06-3p, 71 Fed. Reg. 45,593-03, 45,594 (Aug. 9, 2006) (listing chiropractors among sources who are not "acceptable medical sources"); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 603, n.7 (11th Cir. 2017). Though "other" sources are not entitled to any weight, an ALJ generally "should explain the weight given" to their opinions "when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2). Dr. Boshell's statements regarding whether Plaintiff is able to work are opinions offered in an area reserved to the Commissioner and are thus not entitled to any special significance. (Tr. 34). *See* 20 C.F.R. § 404.1527(d).

Substantial evidence supports the ALJ's determination that Dr. Boshell's opinion was due little weight. Dr. Boshell's opinion that Plaintiff could not sit, stand, or walk for longer than 30 minutes is not consistent with other medical evidence in the record. As discussed above regarding

15

Dr. James's opinion, and by way of example, Plaintiff's treatment notes from 2016 to 2020 showed she had a normal gait and range of motion as well as normal strength and stability in her right hip. (Tr. 539, 1011, 1034, 1044, 1017, 1773, 1783, 1812, 1818). In addition, Dr. Boshell's own treatment notes record various activities performed by Plaintiff that indicate she was able to perform work at a greater capacity than Dr. Boshell stated. (Tr. 1224, 1568, 1583, 1614). Despite Dr. Boshell's opinion that Plaintiff could not sit, stand, or walk for more than 30 minutes, Plaintiff reported cleaning her home, walking and carrying a backpack while on a mission trip, using a stepladder to decorate a tree, and walking around an amusement park, among other relevant activities. (*Id.*). These inconsistencies between Dr. Boshell's opinion and the medical record, as well as the internal inconsistency noted by the ALJ in a November 2018 insurance form, constitute substantial evidence supporting the ALJ's decision to assign her opinion little weight.

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 29, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE